Raymond Morris WOOSLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 36587.

Court of Criminal Appeals of Texas.
March 18, 1964.

Warren Burnett, Odessa, for appellant.

Stephen Haley, County Atty., Seminole, Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is drunk driving; the punishment, 3 days in jail and a fine of $150.

The appellant was stopped while driving an automobile on a public highway about one mile north of Seminole, in Gaines County.

Texas Highway Patrolmen Gene Pate and Charles Miller, who stopped him, testified that appellant was driving across the center stripe and in an erratic manner. Both officers expressed the opinion that he was intoxicated.

Patrolman Pate testified: "He staggered a little bit * * * he was mixed up. He kept repeating the same question and everything to us * * *. He told us he was a partner in a business in Odessa but he couldn't remember the name of the business." He further testified that he found two bottles of Vodka in the car appellant was driving, and a bottle of Vodka mixer.

Patrolman Miller testified that one of the bottles of Vodka was unopened and the other was "a little over two-thirds empty, just a little bit left in the bottom," and that a receipt from a liquor store dated that day for two fifths of Vodka and a quart of mixer was found in the car. Patrolman Miller further testified that he took the appellant upstairs at the jail, at which time he showed symptoms of intoxication—"he couldn't walk up the steps. He fell down one time, fell against the jail. When he walked he raised his feet real high like he was goose stepping and his feet slapped against the ground * * *. He was having difficulty in controlling his legs * * * he acted awful beligerant."

On cross-examination he testified that the appellant "was staggering bad" at the scene of the arrest.

Bob Newman, witness for the state, identified the appellant as the man he saw shortly after dark "on or about May 18th, 1962" on the highway about halfway between Seminole and Andrews. He testified that the appellant was "obviously very drunk" and that he followed him into town and called the Highway Patrol.

The appellant testified in his own behalf and offered witnesses who testified to his good reputation for being sober, peaceable and law abiding, and for truth and veracity. He admitted and proved by one of his witnesses that he had consumed some Vodka about 7:30 P.M.

The appellant testified that he was alone and was driving the automobile when he was stopped by the patrolmen; that he "was not drunk at all. Definitely not intoxicated * * * I didn't have any trouble walking but I was kinda scared * * *."

He admitted that he bought the Vodka that day at Newman's Liquor Store in Ector

County where he had a charge account. He denied that he had ever seen the witness Bob Newman before the trial.

The jury resolved the issue of appellant's being intoxicated against him and the evidence is sufficient to sustain their verdict.

■ The sole ground upon which reversal is sought is: "The trial court reversibly erred in admitting proof of extraneous crimes having no relevance to any issue made by the pleadings or the evidence."

This claim of error is predicated upon the testimony of Bob Newman, and upon the fact that he was unable to fix the exact date he saw the appellant.

The date alleged in the information was "on or about the 18th day of May A.D. 1962." The state's first witness, Patrolman Pate, was asked and answered:

"Q. And I ask you if you had and occasion to see Mr. Woosley on or about the 18th day of May, 1962?

"A. Yes, sir, I did."

Later in his testimony he fixed the time as about 8 o'clock "that particular night." Nowhere in his testimony do we find where Patrolman Pate testified that the offense was committed *on* May 18.

Patrolman Miller fixed the time and date as May 18, 1962, about 9 P.M.

Bob Newman was asked and answered, after identifying the appellant:

"Q. I'll ask you if you saw him on or about May 18th, 1962?

"A. Yes, I did.

"Q. Where did you see him?

"A. On the highway about half way between here and Andrews.

"Q. What transpired that caused you to see him at that place?

"A. Well, I was coming from Andrews toward Seminole and it was after dark and I came over a rise and —"

At this point counsel for the appellant was allowed to question the witness and asked, and the witness answered:

"Q. Mr. Newman, what was the exact day you saw this man?

"A. It was sometime in May, about the middle of May.

"Q. You are not able to tell us what the exact day was?

"A. It's been over a year and I wouldn't be able to swear to the date exactly."

Officer Pate testified:

"Q. Mr. Pate, were you hunting Mr. Woosley?

"A. No sir. * * *

"Q. Just tell Mr. Pate what occurred out there in your presence that occasioned you to see Mr. Woosley.

"A. I got a call on my radio * * *."

■ Objection made after the answer was sustained, though the court correctly stated: "I don't see, unless it goes into what was said that it would be *in* hearsay." The answer was not stricken.

The witness further testified:

"Q. Alright, now I believe you testified that you were not seeking Mr. Woosley.

"A. No sir.

"Q. Were you seeking that particular car.

"A. Yes sir."

We find no merit in the contention that Newman's testimony constituted proof of an extraneous offense, and not the offense which was proved by the testimony of the patrolmen.

The judgment is affirmed.